The People of the State of Illinois, Plaintiff-Appellee, *v.* Otto R. Seibert, Defendant-Appellant.

(No. 12172; )

Fourth District—May 14, 1974.

Swain, Johnson & Guard, of Peoria (James H. Bunce, of counsel), for appellant.

Paul R. Welch, State's Attorney, of Bloomington (John A. Beyer, of Circuit Attorney Project, of counsel), for the People.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Defendant was convicted upon a bench trial of failure to yield the right-of-way. A fine of $15 plus court costs was imposed.

On appeal, it is urged that the trial court erroneously applied the law to the facts of this case, and that defendant was not proved guilty beyond a reasonable doubt.

Defendant was served with a traffic ticket shortly after he was involved in a collision near the intersection of the Colfax-Lexington Road and the Leroy-Lexington Road in McLean County at approximately 7 P.M. on September 2, 1972. The Colfax-Lexington blacktop is an east-west thoroughfare with a speed limit of 65 miles per hour. The Leroy-Lexington blacktop runs north and south, approaching the Colfax-Lexington Road from the south, terminating where it meets the Colfax-Lexington Road by forming a blind end or "T". At this intersection, there is a stop sign facing south for traffic on the Leroy-Lexington Road, but no such sign for the Colfax-Lexington Road which has a preferential right-of-way. Defendant was traveling north on the Leroy-Lexington Road until he stopped for the stop sign at the intersection and turned west (left) onto the Colfax-Lexington Road where his truck was soon struck in the rear by a westbound automobile driven by one Thomas N. Leake.

The evidence conflicts in the details. There is credible testimony indi-

cating that Leake was traveling anywhere from 55 to 90 miles per hour. The investigating officer, based upon an estimate from Leake's skidmarks and a uniform chart printed by the Northwestern Traffic Institute, stated that in his opinion Leake was not speeding. Defendant's expert witness estimated from the skidmarks and the same chart that Leake was traveling at least 70 miles per hour. Estimates of the distance west from the intersection to the point of impact range from 75 to 150 feet, to approximately 100 feet, to 109 feet. Skidmarks from Leake's vehicle were testified to be from 182 feet to 326 feet. Defendant testified that he first saw Leake's vehicle approaching the intersection at a distance of approximately 650 to 700 feet, and that after stopping, he did not hesitate before pulling onto the thoroughfare. However, Leake testified that defendant's car "came up to the stop sign, stopped, and then moved ahead and then it stopped again like it saw me and then pulled out in front of me."

Defendant's conviction rests upon the violation of the Motor Vehicle Code which provides in relevant part:

"\* \* \* After having stopped, the driver shall yield the right-of-way to any vehicle \* \* \* which is approaching so closely on the roadway as to constitute an immediate hazard during the time when the driver is moving across or within the intersection, but said driver having so yielded may proceed at such time as a safe interval occurs." (Ill. Rev. Stat. 1973, ch. 95½, par. 11—904 (b).)

Defendant first contends that the following ruling is erroneous:

"[T]he Court feels that the fact that the approaching vehicle may have possibly been speeding does not relieve the vehicle which is stopped at a stop sign, approaching an intersection, from the duty imposed by the statute, which the Court understands to be that he makes his decision at his peril as to the appropriate time to leave the stop sign and enter the flow of traffic. He has the burden of deciding when a safe interval exists."

■■ We do not agree that the ruling was an improper statement of the law. Counsel misstates both the ruling and the trial court's application of that ruling by arguing in his brief that "the Court is in effect saying that it makes no difference what the speed of the other driver was and that the Defendant proceeds at his peril and if he gets hit he has violated the statute". Borrowing, as we must, some principals from civil cases, we conclude that the trial court did not, contrary to defendants' assertions, erroneously state the law. In *Pennington v. McLean*, 16 Ill.2d 577, 158 N.E.2d 624, the supreme court in a wrongful death case discussed the statute in question:

■■ "That provision has been construed as neither imposing an absolute liability upon the party approaching from the nonpreferential highway, nor conferring an absolute right of way regardless of all circumstances on the party traveling on the preferential highway. [Citations.] Thus, a person approaching a preferred highway is not required to stop, either at the stop sign or at the intersection line, long enough to permit *any* car that he observes on the highway to pass, regardless of its distance from the intersection. [Citations.] The statute requires only that the motorist confronted by a stop sign may, exercising reasonable care, proceed across the intersection after he has stopped and yielded the right of way to such vehicles on the through highway as constitute an 'immediate hazard.' [Citations.]

The Illinois decisions, however, do not provide a precise formula for determining whether a particular vehicle has conformed to set standards; that question must be determined by the jury [Citations.], and involves considerations as to relative speeds and distances of the vehicles from the intersection. [Citations.]"

In *McCormack v. Haan,* 20 Ill.2d 75, 169 N.E.2d 239, the supreme court discussed the application of this statute to a defendant in an action for personal injuries. With regard to the defendant-driver:

"It was his duty to ascertain whether or not it was safe to enter the protected intersection, and if it was not reasonably safe to do so, he should have yielded the right of way to the oncoming vehicle."

It is not difficult to understand why the principles in *Pennington* and *McCormack* must apply in both criminal and civil cases, and why each case must be decided upon its particular facts. Not to do so could lead to absurd results. It would be manifestly unfair, for example, if the driver of the vehicle that had entered an intersection a mere 10 feet in front of an oncoming vehicle, could escape civil liability and criminal penalties merely by proving that the oncoming vehicle was exceeding the speed limit by 1 mile per hour. Likewise, equal injustice would arise if, because the speed of the oncoming vehicle was not a factor to be considered, the driver of a vehicle turning onto a preferential right-of-way would be held criminally and civilly liable when prior to entering the intersection, the road appeared clear, but because the oncoming vehicle, perhaps hidden by a dip in the highway, was traveling at speeds approaching 100 miles per hour on a wet road, a collision resulted.

We hold that the trial court did not incorrectly rule that the fact that the approaching vehicle may have possibly been speeding does not relieve the vehicle stopped at a stop sign from the duty imposed by the

statute. We add here also that the trial court did not, contrary to defendant's argument, rule that it makes no difference what the speed of the approaching vehicle was. The court expressly indicated that "the Court feels that the speed of the approaching vehicle is pertinent in a civil suit and not irrelevant in this case". In addition, it is clear that the trial court considered other factors in reaching its decision as to defendant's guilt.

■■ Defendant asserts that he was not proven guilty beyond a reasonable doubt. Although the testimony is conflicting, there is sufficient credible testimony to conclude that Leake was not speeding; and that defendant hesitated before entering the intersection, which hesitation would indicate that Leake's distance from the intersection was less than the 650 feet estimated by defendant.

In a bench trial, it is the function of the trial court to determine the credibility of the witnesses and the weight to be accorded their testimony, and where the evidence is merely conflicting, a reviewing court will not substitute its judgment for that of the trier of fact. *People v. Scott,* 34 Ill.2d 41, 213 N.E.2d 521.

The judgment is affirmed.

Affirmed.

SMITH, P. J., and CRAVEN, J., concur.